IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LIBERTY MUTUAL GROUP, INC.   :

            :

 v.        :  Civil Action No. DKC 12-0282

            :

CHRISTOPHER WRIGHT     :

            :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this action are a motion to dismiss filed by Respondent Christopher Wright (ECF No. 5) and a motion to strike Respondent's answer and counterclaim filed by Petitioner Liberty Mutual Group, Inc. (ECF No. 6). The issues are fully briefed, and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Respondent's motion will be denied and Petitioner's motion will be granted.

**I. Background**

In 2010, Petitioner, a corporation headquartered in Massachusetts, and Respondent, a resident of Maryland, entered into a homeowner's insurance policy. The policy contained the following provision regarding a determination of the amount of loss to Petitioner:

> **Appraisal.** If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each

> party will choose a competent appraiser
> within 20 days after receiving a written
> request from the other.  The two appraisers
> will choose an umpire.  If they cannot agree
> upon an umpire within 15 days, you or we may
> request that the choice be made by a judge
> of a court of record in the state where the
> "residence premises" is located.  The
> appraisers will separately set the amount of
> loss.  If the appraisers submit a written
> report of an agreement to us, the amount
> agreed upon will be the amount of loss.  If
> they fail to agree, they will submit their
> differences to the umpire.  A decision
> agreed to by any two will set the amount of
> loss.

(ECF No. 1-1).

On December 22, 2010, Respondent's home and its contents suffered water damage due to a leaky pipe.  Respondent obtained a public adjuster and submitted a claim to Petitioner, asserting losses to his home's contents at an "actual cash value" of $102,106.  (ECF No. 1 ¶ 9).  Petitioner subsequently concluded that the "actual cash value" of Respondent's loss was $22,106. (*Id.*).

In mid-April 2011, Respondent sought to invoke the appraisal provision of the homeowner's insurance policy and named his appraiser.  Petitioner selected its appraiser on September 8, 2011.  The appraisers have been unable to agree on an umpire to value the loss from the contents of Respondent's home.

On December 8, 2011, Petitioner filed a "Petition to Appoint Neutral Umpire" in this court. (ECF No. 1).[1] In that filing, Petitioner requested that the court select an umpire to aid the parties' appraisers in valuing the loss to the contents of Respondent's home. It submitted the names of four potential umpires with this request. On December 22, 2011, Respondent moved to dismiss the petition to appoint an umpire, answered the petition, and filed a counterclaim alleging that Petitioner had breached the homeowner's insurance policy. (ECF Nos. 4-5). In response, Petitioner moved to strike the answer and counterclaim, contending that it had "never filed a claim, cause of action, or allegations against [Respondent], therefore giving [him] no basis to file an Answer or Counterclaim." (ECF No. 6). Each party has opposed the other's respective motion.

## II. Respondent's Motion to Dismiss Will Be Denied

### A.   Standard of Review

Although Respondent's motion to dismiss initially recites that the petition "fails to state a cause of action," the crux of Respondent's argument appears to relate to subject matter jurisdiction. (ECF No. 5-1, at 1). Indeed, Respondent asserts

---

[1] The case was filed as a "miscellaneous case," but it was subsequently converted to a "civil case" and placed on the civil docket.

that Petitioner's reliance on the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, "as a ground for jurisdiction" is misplaced, dedicating both its motion to dismiss and its reply to this argument. (*Id.*); (*see also* ECF No. 9, at 7 (asserting that the court "lacks jurisdiction to rule upon the 'Petition to Appoint a Neutral Umpire' . . . as a motion") (footnote omitted)). Therefore, Respondent's motion to dismiss the petition will be construed as one to dismiss for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1). *Cf. Sys. Research & Applications Corp. v. Rohde & Schwarz Fed. Sys., Inc.*, --- F.Supp.2d ---, 2012 WL 12785, at *4 (E.D.Va. Jan. 4, 2012) (analyzing a 12(b)(1) motion to dismiss the plaintiff's motion to stay arbitration proceedings).

The party bringing suit in federal court bears the burden of proving that subject matter jurisdiction properly exists. *See Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (noting that the plaintiff generally bears this burden); *Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 200 (4th Cir. 2008) (stating that a party seeking to remove a case to federal court must demonstrate subject matter jurisdiction). In a 12(b)(1) motion, the court "may consider evidence outside the pleadings" to help determine whether it has jurisdiction over

the case before it. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991), *cert. denied*, 503 U.S. 948 (1992); *see also Evans*, 166 F.3d at 647. The court should grant a 12(b)(1) motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond*, 945 F.2d at 768.

### B.   Analysis

Although its import is difficult to decipher at times, Respondent's jurisdictional argument turns on whether the FAA is applicable to this action.   Initially, Respondent appeared to argue that, because the FAA did not apply, Petitioner could not rely upon it "as a ground" for federal question jurisdiction. (ECF No. 5-1, at 1).   The FAA, however, "does not itself create federal-question jurisdiction," *Choice Hotels Int'l, Inc. v. Shiv Hospitality, LLC*, 491 F.3d 171, 175 (4th Cir. 2007).[2] Therefore, regardless of the FAA's applicability, Petitioner must have "an independent jurisdictional basis" for its petition in order for the court to have subject matter jurisdiction. *Vaden v. Discover Bank*, 129 S.Ct. 1262, 1271 (2009) (explaining that the FAA "bestows no jurisdiction on federal courts but,

---

[2] Respondent recognized – and emphasized – this point in subsequent motion papers.   (*See* ECF No. 8, at 7).

rather, requires for access to a federal forum an independent jurisdictional basis over the parties' dispute." (brackets omitted)).

Petitioner does not allege that its application for appointment of an umpire presents a federal question. Accordingly, it must allege facts demonstrating jurisdiction on the basis of diversity of citizenship in order for subject matter jurisdiction to be proper in this court. Pursuant to 28 U.S.C. § 1332(a)(1), diversity jurisdiction exists over "civil actions" involving citizens of different states and amounts in controversy exceeding $75,000. The parties appear to agree that Petitioner is a Massachusetts corporation with its principal place of business in Massachusetts, and that Respondent is a resident of Maryland.[3] Thus, it is undisputed that the diversity requirement is satisfied.

_____

[3] Respondent appears to challenge Petitioner's standing by asserting that Petitioner is the "wrong entity" to bring this action because one page of the homeowner's insurance policy states that "[i]nsurance is provided by Liberty Mutual Fire Insurance Company." (ECF No. 8, at 6-7). This assertion, however, overlooks numerous pages of the policy marked with the name "Liberty Mutual Group," which seem to indicate that Liberty Mutual Fire Insurance Company is part of "Liberty Mutual Group." (*See, e.g.*, ECF No. 1-1, at 2, 5, 8). This conclusion is bolstered by the fact that many of Respondent's own exhibits contain claim-related correspondence directed to or provided by "Liberty Mutual Group." (*See, e.g.*, ECF Nos. 8-2, 8-3, 8-7, 8-10).

Additionally, the amount in controversy exceeds the jurisdictional minimum.  In similar actions involving motions to appoint an umpire, courts have looked beyond the cost of the umpire to the value of the parties' underlying dispute in determining whether the amount in controversy is sufficient. *See, e.g.*, *Manze v. State Farm Ins. Co.*, 817 F.2d 1062, 1069 (3[d] Cir. 1987) (reaching this conclusion by analogizing to cases that have evaluated the amount in controversy for motions to compel arbitration).[4]  Respondent has requested payment of $102,106 for his home's contents on an "actual cash value basis," which is permissible under the terms of the homeowner's insurance policy. (*See* ECF No. 1-1, at 6 ("You may . . . make a claim for loss of or damage to property on an actual cash value basis.")).  Petitioner, however, has valued those contents at an "actual cash value" of $22,106, an amount $80,000 below that requested by Respondent – and above the jurisdictional minimum of $75,000.

Respondent's jurisdictional argument, however, goes beyond the traditional questions involving diversity and amount in controversy.  Ultimately, he challenges whether the petition to

---

[4] The United States Court of Appeals for the Fourth Circuit has upheld the use of this method to determine the amount in controversy in actions involving motions to compel arbitration. *See Delta Fin. Corp. v. Paul D. Comanduras & Assocs.*, 973 F.2d 301, 304 (4th Cir. 1992).

appoint an umpire constitutes a "civil action." (*See* ECF No. 9, at 15-16). According to Respondent, with very limited exceptions – one of which involves the FAA, a "civil action" does not commence, and a court is thus without jurisdiction, until a complaint is filed. Maintaining that the FAA does not apply to appraisals, Respondent contends that the court lacks jurisdiction over the petition because Petitioner never filed a complaint. Although Respondent's procedural argument is correct in theory, it fails in practice because the FAA is applicable here.

Federal Rules of Civil Procedure 2 and 3 provide that the only cognizable "form of action" is "the civil action," which does not commence until a complaint has been filed. Thus, where a plaintiff seeks relief from the court without filing a complaint, the court generally lacks jurisdiction to provide the requested relief. *See, e.g.*, In re *Warrant Authorizing Interception of Oral Commc'ns Within the Premises Known as 165 Atwells Ave., Providence, R.I.*, 673 F.2d 5, 7 (1st Cir. 1982) ("But since no complaint was ever filed in this case, the [district] court did not have jurisdiction over any ordinary civil action." (citing Fed.R.Civ.Proc. 3)); *Cook v. SEC*, 664 F.Supp.2d 997, 998 (D.Minn. 2009) (denying a plaintiff's motion to stay an investigation by the SEC where "no complaint ha[d]

been filed" because the "Federal Rules . . . restrict original jurisdiction . . . to a single form of action that is commenced . . . only by filing a complaint with the court"); *Adair v. England*, 193 F.Supp.2d 196, 200 (D.D.C. 2002) ("When no complaint is filed, the court lacks jurisdiction to entertain the plaintiff's petition." (citing Fed.R.Civ.Proc. 3)). "These rules," however, do not "govern" where the FAA sets forth "other procedures" for a petitioner to follow. Fed.R.Civ.Proc. 1; Fed.R.Civ.Proc. 81(a)(6)(B); *cf. D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 107-08 ($2^d$ Cir. 2006) (declining to hold investors in default under Rule 55 for failing to respond to a motion to confirm an arbitration award because the case did not involve "a complaint initiating a plenary action").

Two sections of the FAA set forth "other procedures" that are significant here. Section 6 of the FAA provides that "[a]ny application to the court hereunder shall be made and heard in the manner provided by law *for the making and hearing of motions*, except as otherwise herein expressly provided." 9 U.S.C. § 6 (emphasis added). Section 5 of the FAA states as follows:

> If in the agreement provision be made for a method of naming or appointing . . . an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method,

9

> or if for any reason there shall be a lapse
> in the naming of an . . . umpire, . . . then
> upon the application of either party to the
> controversy the court shall designate and
> appoint an . . . umpire, . . . who shall act
> under the said agreement with the same force
> and effect as if he or they had been
> specifically named therein.

9 U.S.C. § 5.

Petitioner has requested that the court appoint an umpire pursuant to the appraisal provision set forth in the homeowner's insurance policy because the appraisers have been unable to agree on an umpire to fill this role.[5] Thus, if the FAA is applicable to this appraisal provision, the fact that Petitioner has not filed a complaint in accordance with the Federal Rules will not be fatal to its request. *Cf. New England Reinsurance Corp. v. Tennessee Ins. Co.*, 780 F.Supp. 73, 78 (D.Mass. 1991) (granting the plaintiff's motion to compel arbitration even though no complaint had been filed because section 4 of the FAA permitted the filing of such motions with the court);[6] *In re*

_____

[5] Petitioner's request is titled as a "petition," rather than as a "motion" or an "application," but this minor wording distinction is of no moment. *See ANR Coal Co, Inc. v. Cogentrix of N.C., Inc.*, 173 F.3d 493 (4th Cir. 1999) (reasoning, in the context of a request to vacate an arbitration award pursuant to the FAA, that "erroneous nomenclature does not prevent the court from recognizing the true nature of a motion").

[6] The defendant in *New England Reinsurance Corp.* moved specifically to dismiss a motion to compel arbitration "for failure to state a claim for which relief may be granted,"

*Conservatorship of United Independent Fed. Credit Union*, 768 F.Supp. 42, 44-45 (E.D.N.Y. 1991) (concluding that a petitioner seeking a show cause order did not have to comply with Rule 3 by filing a complaint because the relevant statute authorized application for such relief without a complaint).

The FAA applies to "a written provision in . . . a contract evidencing a transaction involving [interstate] commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction." 9 U.S.C. § 2.  The parties do not dispute that the homeowner's insurance policy – and the appraisal provision in particular – involve interstate commerce within the meaning of the FAA.  *See Wailua Assocs. v. Aetna Cas. & Sur. Co.*, 904 F.Supp. 1142, 1147 n.2 (D.Haw. 1995) (reasoning that "the word 'commerce' . . . includes insurance"); *see also Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 282 (1995) (noting that a transaction may involve interstate commerce where, *inter alia*, the parties are diverse).  Rather, they disagree about whether the appraisal provision constitutes an arbitration clause, and both parties point principally to state law cases in support of their respective arguments.

---

rather than for lack of jurisdiction.  *Id.*  Rejecting the defendant's argument, the court noted only that the argument itself was "not meritorious." *Id.*  It did not consider whether the nature of the argument was, in fact, jurisdictional.

As a threshold matter, it is necessary to determine whether resolution of this issue requires application of federal law or state law.  Two circuit courts of appeal previously looked to state law in defining "arbitration" under the FAA, but they articulated few reasons for doing so.  *See Wasyl, Inc. v. First Boston Corp.*, 813 F.2d 1579, 1582 (9th Cir. 1987) (noting merely that the FAA does not define "arbitration" and that the FAA preempts state law only "to the extent necessary to protect the achievement of [its] aims"); *Hartford Lloyd's Ins. Co. v. Teachworth*, 898 F.2d 1058, 1059 (5th Cir. 1990) (citing *Wasyl* in looking to state law to determine whether appraisal constituted "arbitration" under the FAA).  More recent cases, however, have strongly criticized this approach, emphasizing the "national uniformity" Congress desired when enacting the FAA and reasoning that reliance on state law to define "arbitration" will produce non-uniform results.  *See, e.g.*, *Salt Lake Tribune Publ'g Co., LLC v. Mgmt. Planning, Inc.*, 390 F.3d 684, 688-89 (10th Cir. 2004) (relying on "the general assumption that in the absence of a plain indication to the contrary, Congress when it enacts a statute is not making the application of the federal act dependent on state law"); *Fit Tech, Inc. v. Bally Total Fitness Holding Corp.*, 374 F.3d 1, 6 (1st Cir. 2004) ("That a uniform federal definition [of arbitration] is required is obvious to

us. . . . Assuredly Congress intended a 'national' definition for a national policy."). Indeed, a three-judge panel of the United States Court of Appeals for the Ninth Circuit, constrained to apply *Wasyl* in a subsequent opinion, "express[ed] . . . doubts as to whether *Wasyl* . . . was correctly decided." *See Portland Gen. Elec. Co. v. United States Bank Trust Nat'l Ass'n*, 218 F.3d 1085, 1091 (9th Cir. 2000) (Tashima & Lay, JJ., concurring); *id.* at 1091-92 (McKeown, J., concurring).

The reasoning of these more recent cases is persuasive. "It seems counter-intuitive to look to state law to define a term in a federal statute on a subject as to which Congress has declared the need for national uniformity." *Id.* at 1091 (Tashima & Lay, JJ., concurring). To do so would merely create "a patchwork in which the FAA will mean one thing in one state and something else in another" – a result illustrated by the conflicting opinions in *Wasyl* and *Teachworth*, which reached opposite conclusions about whether "appraisal" constitutes "arbitration" under the FAA by looking to state law. *Id.*; *compare Wasyl*, 813 F.2d at 1582 (appraisals constitute "arbitration" under the FAA pursuant to California law), *with Teachworth*, 898 F.2d at 1059 (appraisals do not constitute "arbitration" under the FAA pursuant to Texas law). Because "Congress did not plainly intend arbitration to mean different

things in different states," *Salt Lake Tribune Publ'g Co.*, 390 F.3d at 689, it is appropriate to apply federal law – rather than state law – when evaluating whether the FAA is applicable to the appraisal provision here.

In determining whether the appraisal provision constitutes an enforceable arbitration clause under the FAA, thereby triggering the FAA, "[i]t is . . . irrelevant that the contract language in question does not employ the word 'arbitration' as such.  Rather, what is important is [whether] the parties clearly intended to submit some disputes" to binding review by a third party. *McDonnell Douglas Fin. Corp. v. Pa. Power & Light Co.*, 858 F.2d 825, 830-31 (2$^{d}$ Cir. 1988) (internal quotation marks and brackets omitted); *see also Omaha v. Omaha Water Co.*, 218 U.S. 180, 194 (1910) (noting that a particular dispute had involved arbitration "though the arbitrators were called appraisers").  Federal courts have used "differing verbal formulations" to determine whether a particular dispute resolution procedure constitutes "arbitration" under the FAA. *See Advanced Bodycare Solutions, LLC v. Thione Int'l, Inc.*, 524 F.3d 1235, 1239 (11th Cir. 2008).

> One widely-followed opinion asks whether the parties have agreed to submit a dispute to a third party for a decision. *AMF Inc. v. Brunswick Corp.*, 621 F.Supp. 456, 460 (E.D.N.Y. 1985) (Weinstein, J.).  Other authority considers how closely the

14

> procedure    chosen    resembles    "classic
> arbitration" and whether enforcing it serves
> the  intuited  purposes  of  Congress.    *Fit
> Tech, Inc.*[, 374 F.3d at 6-7]; *Salt Lake
> Tribune Publ'g Co.*[, 390 F.3d at 689-90].

*Id.*  Although  different  in  formulation,  these  definitions  "do

not  constitute  a  real  disagreement,  because  submitting  a  dispute

to  a  third  party  for  a  binding  decision  is  quintessential

'classic  arbitration.'"    *Id.*  (citing  *Salt  Lake  Tribune  Publ'g

Co.*,  390  F.3d  at  689).    Under  either  formulation,  while  the

umpire's   singular   involvement   in   the   appraisal   may   not

constitute  "arbitration,"  the  appraisal  process  set  forth  in  the

homeowner's  insurance  policy  does  fall  under  the  FAA.    *See Salt

Lake  Tribune  Publ'g  Co.*,  390  F.3d  at  690-91  (analyzing  whether

the  FAA  was  applicable  to  an  appraisal  provision  by  looking

first  to  the  independent  appraiser's  involvement  and  then  to  the

overall appraisal process).[7]

Here,  the  umpire's  involvement  in  the  appraisal  process,  on

its  own,  does  not  constitute  arbitration  and,  therefore,  does

_____

[7] The  parties  devote  little  attention  to  the  scope  of  the
appraisal  process  in  determining  whether  the  appraisal  provision
is  an  arbitration  clause.    Instead,  they  argue  generally  about
whether  "appraisal"  constitutes  "arbitration"  under  the  FAA.
The  opinion  of  the  United  States  Court  of  Appeals  for  the  Tenth
Circuit  in  *Salt  Lake  Tribune  Publ'g  Co.*,  however,  makes  clear
that  the  more  reasoned  approach  involves  consideration  of  the
dispute  resolution  procedure  at  issue  in  a  particular  case,
rather  than  consideration  of  that  procedure  in  the  abstract.
*See id.*

15

not trigger application of the FAA.  The parties agreed that their appraisers would "separately set the amount of loss" and "submit their differences to the umpire" only if they failed to agree on the amount of loss.  (*See* ECF No. 1-1, at 19).  From there, "[a] decision agreed to by *any two* w[ould] set the amount of loss."  (*Id.*) (emphasis added).  Thus, it is at least technically possible that the two appraisers could independently agree on a loss value even after selecting an umpire and submitting their differences to him.  *Cf. Salt Lake Tribune Publ'g Co.*, 390 F.3d at 690 (concluding that a third appraiser's involvement in an appraisal process did not constitute "arbitration" under the FAA where the appraisal provision stated that the valuation provided by the third appraiser "may, or may not, be used to calculate the exercise price").  Because the umpire might not render the decision that settles the dispute, the "one feature that must necessarily appertain to a[n arbitration] process" could be lacking.  *Id.* Accordingly, submission to the umpire of the difference in the amount of loss does not itself constitute "arbitration" under the FAA.

When viewed on the whole, however, the entire appraisal process does constitute "arbitration."  The parties agreed to select "competent appraiser[s]" if they could not agree on the amount of loss, and their agreement provides a fixed procedure

16

for those appraisers to follow in setting the amount of loss. (*See* ECF No. 1-1, at 19).   Submission of the dispute to the appraisers will ultimately settle that issue, as the appraisers – perhaps through involvement of the umpire – will reach a binding decision through that process.   *AMF, Inc.*, 621 F.Supp. at 460-61; *see also McDonnell Douglas Fin. Corp.*, 858 F.2d at 830 (finding a dispute resolution procedure to be "arbitration" because it involved submission of "certain disputes to a specified third party for *binding resolution*").[8]   The fact that the appraisal process does not settle the parties' entire controversy or require an official adversary proceeding, complete with witnesses and cross-examination, is of no moment, *see Fit Tech, Inc.*, 374 F.3d at 7; *AMF, Inc.*, 621 F.Supp. at 460, particularly given that "as a matter of federal law, any doubts concerning [arbitrability] should be resolved in favor of

---

[8] In *Salt Lake Tribune Publ'g Co.*, the Tenth Circuit found that the appraisal provision as a whole did not constitute "arbitration."   Its conclusion, however, is distinguishable from the present case in two critical ways.   First, the Tenth Circuit noted that the district court had not analyzed this issue in its opinion, instead evaluating only whether the third appraiser's involvement constituted "arbitration" under the FAA.   Second, the appraisal agreement there expressly provided that the parties could go to court to resolve their conflict, a statement that "hardly sounds like arbitration," *Salt Lake Tribune Publ'g Co.*, 390 F.3d at 691, and one that is notably absent from the appraisal provision at issue here.

arbitration," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

Because the appraisal provision, on the whole, does constitute "arbitration" under the FAA, the FAA is applicable to the petition at issue here.   Accordingly, although Petitioner requested appointment of an umpire without first filing a complaint, it has complied with the applicable procedural rules set forth in 9 U.S.C. §§ 5-6.   *See* Fed.R.Civ.Proc. 81(a)(6)(B). The court thus has subject matter jurisdiction over the case on the basis of diversity of citizenship, as previously explained. Respondent's motion to dismiss must, therefore, be denied.

## III. Respondent's Answer and Counterclaim Are Procedurally Improper and Will Be Stricken

The applicability of the FAA to this case also has implications for Respondent's answer and counterclaim.   Because "[t]he policy behind section 6 [of the FAA] is to expedite judicial treatment of matters pertaining to arbitration," *O.R. Sec., Inc. v. Prof'l Planning Assocs., Inc.*, 857 F.2d 742, 745 (11th Cir. 1988), § 6 instructs parties petitioning for relief under the FAA to do so "in the manner provided by law for the making and hearing of motions," 9 U.S.C. § 6.   Applications filed pursuant to § 6 are, therefore, "motions . . . rather than complaint[s] initiating . . . plenary action." *Gottdiener*, 462 F.3d at 108.   For this reason, responding to this initial motion

18

with an answer or counterclaim is procedurally improper. *See Booth v. Hume Publ'g, Inc.*, 902 F.2d 925, 930-32 (11th Cir. 1990) (affirming the district court's decision to disallow counterclaims in response to a motion to confirm an arbitration award because the FAA had set forth its own procedural rules and "to blindly follow the Federal Rules of Civil Procedure [instead] . . . would frustrate the purpose, or destroy the summary nature, of a special, statutorily created cause of action"); *Alstom Power, Inc. v. S&B Eng'rs & Constructors, Ltd.*, No. 3:04-CV-2370-L, 2007 WL 1284968, at *3 (N.D.Tex. Apr. 30, 2007) ("Answers . . . are matters that relate to civil *actions*, not motions pertaining to arbitration proceedings." (emphasis in original)); *cf. generally EEOC v. Bay Shipbuilding Corp.*, 668 F.2d 304 (7th Cir. 1981) (affirming the district court's denial of a defendant's request to file an answer and counterclaim where the plaintiff had filed an "application" to enforce an administrative subpoena, as required by statute, rather than a complaint).

Here, because Respondent filed an answer and a counterclaim in response to the petition to appoint an umpire – a motion pursuant to § 6 of the FAA, Respondent's answer and counterclaim were procedurally improper. That paper, therefore, will be stricken, and Petitioner's motion to strike will be granted.

After resolution of the parties' motions, only Petitioner's request for appointment of an umpire will remain outstanding. Respondent will now be given fourteen days to oppose the merits of that motion.

## IV. Conclusion

For the foregoing reasons, Respondent's motion to dismiss will be denied, and Petitioner's motion to strike will be granted. A separate Order will follow.

                                        /s/
                              _____
                              DEBORAH K. CHASANOW
                              United States District Judge